Citation Nr: 1434238 
Decision Date: 07/31/14 Archive Date: 08/04/14

DOCKET NO. 08-17 292 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Winston-Salem, North Carolina


THE ISSUE

Entitlement to a higher initial disability rating for posttraumatic stress disorder (PTSD), evaluated as 30 percent disabling from April 30, 2003 to March 16, 2013, and as 50 percent disabling from March 27, 2013, forward. 


REPRESENTATION

Appellant represented by: Sean Kendall, Attorney


WITNESSES AT HEARING ON APPEAL

Veteran and his wife


ATTORNEY FOR THE BOARD

T. Sherrard, Counsel


INTRODUCTION

The Veteran, who is the Appellant in this case, had active service from October 1973 to October 1976, and from March 1978 to April 1993. 

This matter comes before the Board of Veterans' Appeals (BVA or Board) from a September 2003 rating decision by the above Department of Veterans Affairs (VA) Regional Office (RO) that granted service connection for PTSD and assigned a 30 percent disability rating. During the appeal process, the RO assigned a 50 percent disability rating, effective from March 27, 2013. 

The Veteran and his wife provided testimony at a February 2011 Travel Board hearing before a Veterans Law Judge who has since retired. The Veteran elected to have a second hearing, and in April 2014, he provided additional testimony before the undersigned Veterans Law Judge at VA's Central Office in Washington, D.C. Transcripts of both hearings are associated with the claims file.

The Board denied this claim in a July 2011 decision. However, thereafter, the parties were made aware of additional relevant treatment records that were not of record at the time of the Board's decision. Thus, the United States Court of Appeals for Veterans Claims (Court) granted a Joint Motion for Remand (Joint Motion) that vacated the Board's July 2011 decision and remanded the claim for the Board to obtain and consider those records. In August 2012, the Board remanded the case to obtain the treatment records and to afford the Veteran a VA examination. As discussed below, the development requested was accomplished, and the claim is now appropriate for appellate review. 

The Board has not only reviewed the Veteran's physical claims file but also the Veteran's file on the "Virtual VA" system to insure a total review of the evidence.





FINDING OF FACT

Throughout the initial rating period on appeal, the Veteran's PTSD has manifested symptoms commensurate with occupational and social impairment with reduced reliability and productivity.


CONCLUSIONS OF LAW

1. Resolving reasonable doubt in the Veteran's favor, the criteria for a 50 percent disability rating for PTSD have been met for the initial rating period on appeal prior to March 27, 2013. 38 U.S.C.A. §§ 1155, 5103(a), 5103A, 5107 (West 2002 & Supp. 2013); 38 C.F.R. §§ 3.102, 3.159, 4.1, 4.2, 4.3, 4.7, 4.10, 4.130, Diagnostic Code 9411 (2013).

2. The criteria for a disability rating in excess of 50 percent for PTSD have not been met for any part of the initial rating period on appeal. 38 U.S.C.A. §§ 1155, 5103(a), 5103A, 5107 (West 2002 & Supp. 2013); 38 C.F.R. §§ 3.102, 3.159, 4.1, 4.2, 4.3, 4.7, 4.10, 4.130, Diagnostic Code 9411 (2013).


REASONS AND BASES FOR FINDING AND CONCLUSIONS

Disability evaluations (ratings) are determined by evaluating the extent to which a veteran's service-connected disability adversely affects his ability to function under the ordinary conditions of daily life, including employment, by comparing the symptomatology with the criteria set forth in the Schedule for Rating Disabilities (Rating Schedule). 38 U.S.C.A. § 1155; 38 C.F.R. §§ 4.1, 4.2, 4.10.

In evaluating a disability, the Board considers the current examination reports in light of the whole recorded history to ensure that the current rating accurately reflects the severity of the condition. The Board has a duty to acknowledge and consider all regulations that are potentially applicable. Schafrath v. Derwinski, 
1 Vet. App. 589 (1991). The medical as well as industrial history is to be considered, and a full description of the effects of the disability upon ordinary activity is also required. 38 C.F.R. §§ 4.1, 4.2, 4.10.

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. See 38 C.F.R. § 4.7. Reasonable doubt regarding the degree of disability will be resolved in the veteran's favor. 38 C.F.R. § 4.3. 

In view of the number of atypical instances it is not expected, especially with the more fully described grades of disabilities, that all cases will show all the findings specified. Findings sufficiently characteristic to identify the disease and the disability therefrom, and above all, coordination of rating with impairment of function will, however, be expected in all instances. 38 C.F.R. § 4.21 (2013). At the time of an initial rating, separate ratings can be assigned for separate periods of time based on facts found, a practice known as "staged" ratings. Fenderson v. West, 12 Vet. App. 119, 126 (1999).

Evaluations for PTSD are assigned pursuant to 38 C.F.R. § 4.130, Diagnostic Code 9411. Under the general formula for rating mental disorders, a 30 percent evaluation is assigned when the evidence demonstrates occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, and mild memory loss (such as forgetting names, directions, recent events). 38 C.F.R. § 4.130. 

A 50 percent rating is assigned where there is occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; and difficulty in establishing and maintaining effective work and social relationships. Id. 

A rating of 70 percent is assigned where there is occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); and inability to establish and maintain effective relationships. Id. 

A 100 percent schedular evaluation contemplates total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. Id. 

In assessing the evidence of record, it is important to note that the Global Assessment of Functioning (GAF) score is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Richard v. Brown, 9 Vet. App. 266, 267 (1996) (citing DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 4th ed. (DSM-IV) at 32).

A GAF score in the range of 51-60 indicates "Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." Id. 

A GAF score in the range of 61 to 70 reflects "Some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." Id. 

The list of symptoms under the rating criteria are meant to be examples of symptoms that would warrant the evaluation, but are not meant to be exhaustive. The Board need not find all or even some of the symptoms to award a specific evaluation. Mauerhan v. Principi, 16 Vet. App. 436, 442-3 (2002). On the other hand, if the evidence shows that a veteran suffers symptoms or effects that cause occupational or social impairment equivalent to what would be caused by the symptoms listed in the diagnostic code, the appropriate equivalent rating will be assigned. Mauerhan, 16 Vet. App. at 443. The United States Court of Appeals for the Federal Circuit (Federal Circuit) has embraced the Mauerhan Court's interpretation of the criteria for rating psychiatric disabilities. Sellers v. Principi, 372 F.3d 1318, 1326 (Fed. Cir. 2004).

In rendering a decision on appeal, the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. See Gabrielson v. Brown, 7 Vet. App. 36, 39-40 (1994); Gilbert v. Derwinski, 1 Vet. App. 49, 57 (1990). Competency of evidence differs from weight and credibility. Competency is a legal concept determining whether testimony may be heard and considered by the trier of fact, while credibility is a factual determination going to the probative value of the evidence to be made after the evidence has been admitted. Rucker v. Brown, 10 Vet. App. 67, 74 (1997); Layno v. Brown, 6 Vet. App. 465, 469 (1994); see also Cartright v. Derwinski, 2 Vet. App. 24, 25 (1991) ("although interest may affect the credibility of testimony, it does not affect competency to testify"). Lay testimony is competent when it regards the readily observable features or symptoms of injury or illness and "may provide sufficient support for a claim of service connection." See Layno, 6 Vet. App. at 469; 38 C.F.R. § 3.159(a)(2). 

When all the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with a veteran prevailing in either event, or whether a preponderance of the evidence is against a claim, in which case, the claim is denied. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102.

The Board has reviewed all the evidence in the Veteran's claims file. Although the Board has an obligation to provide adequate reasons and bases supporting this decision, there is no requirement that the evidence submitted by a veteran or obtained on his behalf be discussed in detail. Rather, the Board's analysis below will focus specifically on what evidence is needed to substantiate the claim and what the evidence in the claims file shows, or fails to show, with respect to the claim. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000); Timberlake v. Gober, 14 Vet. App. 122, 128-30 (2000).

In this case, the Veteran is in receipt of an initial 30 percent disability rating, effective from April 30, 2003, the date that an informal claim for service connection was received. During the course of this appeal, the RO assigned a higher 50 percent disability rating, effective from March 27, 2013. 

The Veteran contends that that his PTSD symptoms - which include anger, anxiety, impaired impulse control, frequent confrontations with others, hypervigilance, difficulty sleeping, difficulty adapting to stressful situations, disturbances of mood and motivation, and suicidal ideation - warrant a 70 percent disability rating. At the very least, he avers that the 50 percent disability rating should have been given an earlier effective date, as he states that his PTSD symptoms have been constant in severity throughout the initial rating period on appeal. 

After reviewing all the lay and medical evidence of record, resolving reasonable doubt in favor of the Veteran, the Board finds that the criteria for a higher initial evaluation of 50 percent, but no higher, have been more nearly approximated for the rating period on appeal prior to March 27, 2013, when the current 50 percent disability rating became effective. 

Affording the Veteran all reasonable doubt, the Board finds that prior to March 27, 2013, the evidence shows that the Veteran's service-connected PTSD was productive of symptoms commensurate with occupational and social impairment with reduced reliability and productivity due to symptoms such as chronic sleep impairment, anxiety, depression, irritability, low frustration tolerance, impaired impulse control without episodes of violence, disturbances of motivation and mood, intrusive thoughts, nightmares, suicidal ideation, and difficulty in establishing and maintaining effective work and social relationships, which more nearly approximates the criteria for a 50 percent rating under the general rating formula for mental disorders. 38 C.F.R. § 4.130.

For example, reviewing the evidence relevant to the rating period on appeal prior to March 27, 2013, VA treatment notes from May 2003 indicate that the Veteran reported feeling alert and watchful, experiencing cold sweats, and dwelling on friends who were killed in combat. He also reported insomnia and prolonged depression with a history of substance abuse. 

In September 2003, the Veteran complained of irritable mood, intrusive memories of combat, and sleep disturbances with only three to four hours of sleep per night. Speech was normal, behavior was appropriate, mood was depressed, and affect was appropriate. Thought content was normal, and there were no hallucinations or suicidal or homicidal ideations. He was fully oriented, and concentration, insight, judgment, and memory were normal. The symptoms reported in 2003 (the year in which he filed his service connection claim) are similar in severity to his current symptoms, which reflect moderate impairment consistent with the currently assigned 50 percent disability rating.

In November 2003, the Veteran reported having nightmares two to three times per week, and his wife described him as being "jumpy." VA treatment notes from 2004 and 2005 show group counseling treatment for ongoing symptoms of depression, anxiety, and sleep impairment. 

The Veteran was afforded a VA examination in April 2005, at which it was noted that he was "very depressed," had latency in his responses, and had very poor concentration. Speech was reduced in productivity and he had flattened tone. The Veteran reported depressed mood daily, as well as frequent nightmares and intrusive thoughts. He stated he was less interested in social activities and emotional detachment from others. Further, he stated he woke up throughout the night and felt constantly on guard and easily startled. He also reported decreased productivity at work (approximately 20 to 30 percent of the time) due to periods when he had to sit, refocus, and take time away from other people. A GAF score of 54 was assigned, reflecting moderate symptoms, again commensurate with a 50 percent disability rating. 

In February 2006, the Veteran reported that he was unable to sleep for more than four hours, irritability, feeling angry, a low frustration threshold, two to three panic attacks per day, occasional visual hallucinations, feeling scared, inability to trust anyone, and always being on guard. He stated he occasionally had aggressive thoughts, but was able to control them. The VA psychiatrist noted that he was angry and irritable, but that he denied suicidal and homicidal thoughts. The GAF score assigned was 55. 

In June 2006, the Veteran continued to report sleep difficulties, nightmares, flashbacks, irritability, hypervigilance, and low frustration tolerance. He scored a 27 on the Beck Depression Inventory, reflecting moderate depression. The GAF score remained 55. 

In May 2007, the Veteran was observed to be anxious and angry. He reported mood dysphoria, decreased concentration, forgetfulness, chronic irritability with angry outbursts, hypervigilance, and a desire to avoid others. The GAF score remained at 55, still reflecting moderate symptoms.

In April 2008, the Veteran reported ongoing sleep difficulty, stating that he got approximately three-and-a-half hours of sleep at night and napped for about fifteen minutes during the day. He stated that he had received a warning at work because he was angry and yelled. He denied visual hallucinations and suicidal and homicidal ideation. The GAF score was 59. 

In October 2009, the Veteran stated that his depression and anxiety were under control with medication, but he still experienced PTSD symptoms three to four days per week. Sleep was also improved to five hours with medication. However, he reported an increase in nightmares. Mood was dysphoric and affect was sad. 

In May 2010, the Veteran reporting ongoing frustration with coworkers, as he believed they were not doing their jobs. He expressed much anger, and also had some anxiety over finances and work. Mood was irritable. The GAF score was 58. 

The Veteran was afforded a VA examination in June 2010. He reported nervousness, depression, difficulty sleeping with nightmares three times per week, daily intrusive thoughts, constant anxiety, being easily startled, hypervigilance, intolerance of crowds, and short-temperedness. He stated his concentration was not good, that he was sad about 90 percent of the time, and he cried three times per week. He stated he had no close friends and limited recreational and leisure pursuits. Mood was tense and the Veteran was tearful during the examination. The VA examiner assigned a GAF score of 54, described his PTSD symptoms as moderate in severity, and stated that the PTSD symptoms would result in "some impairment of social functioning."

In October 2010, it was noted that the Veteran was gaining insight into his PTSD symptoms and how they interfaced with his current life. He completed a sixteen week coping skills program, and stated that although he attempted to use the coping skills he learned, his anger and/or anxiety would often "take over." The GAF score was 62, reflecting mild symptoms. 

In January 2011, the Veteran appeared moderately depressed, mildly anxious, and became teary-eyed during his counseling session. He stated that work remained stressful, and that he had to meet with his supervisor on occasion regarding episodes of overreaction. The VA clinician assessed a moderate level of impairment, commensurate with a 50 percent disability rating. 

In October 2011, the Veteran's mood was mildly dysphoric related to stressors. However, the Veteran denied and there was no evidence of mood swings, mania, or impulse control issues. A GAF score of 62 was assigned, reflecting mild symptoms. 

In February 2012, the Veteran called the VA crisis line stating that he was depressed and was having thoughts of harming himself with no intent. He stated he had been unable to sleep and was worried about his job. He also reported feeling depressed and had no energy or motivation. He denied current suicidal ideation and was told to call back if thoughts of harming himself returned. 

In April 2012, the Veteran denied suicidal ideation, plan, or intent, and the VA psychologist assessed moderate impairment due to PTSD symptoms. 

In May 2012, the Veteran's mood appeared to be moderately depressed, affect was tearful, and range was somewhat histrionic. The Veteran stated that he had feelings of hopelessness and a sense that he was "not going to make it." He denied any active suicidal ideation, but stated that "wanting to die" had been a frequent thought in his head for many years, and that it waxed and waned in severity. 

In August 2012, the Veteran was admitted to the hospital for feelings of increased anxiety and suicidal ideation without plan. He initial reported to the emergency room, stating that he had been on his way to work and that he just "couldn't take it." He stated he felt as though every day was his last day due to threatening layoffs, and that morale was down at work. He reported having a lot of anxiety, nightmares, difficulty sleeping (about three to four hours at night), difficult being in crowds of people, feeling isolated, depressed, guilty, shameful, and hopeless. He was voluntarily admitted and received inpatient treatment for about one week. At discharge, it was noted that his PTSD symptoms were no longer an acute crisis.

In October 2012, the Veteran reported that he had suicidal ideation daily, but no intent to harm himself, as his hope to continue reconciliation with his family kept him from making any plans or taking action. In November 2012, he was assigned a GAF score of 63. 

In December 2012, the Veteran denied suicidal ideation at a group therapy session, and became angry when he was told to talk less. In January and March 2013, the Veteran reported ongoing symptoms including depressed mood, significant anxiety, intrusive thoughts, insomnia, nightmares, and social avoidance. He denied suicidal ideation. 
 
The Board acknowledges the conflicting evidence in this case. Namely, none of the medial evidence for the period prior to March 27, 2013 (or any part of the rating period on appeal) indicates the presence of deficits of speech, difficulty in understanding complex commands, memory impairment, or impaired judgment or abstract thinking. It is important for the Veteran to understand that there is significant evidence against a rating in excess of 30 percent for this period. 
Indeed, the Veteran's treating and examining providers have consistently assigned GAF scores that appear to reflect overlapping symptoms associates with the criteria for disability ratings in the range between 30 and 50 percent. As noted above, GAF scores have ranged between 54 and 63, indicating the presence of mild to moderate symptoms. The scores on the lower end of that range were assigned primarily prior to March 2013, when the currently assigned 50 percent disability rating went into effect, providing evidence in favor of the Veteran's contention that his PTSD symptoms did not suddenly worsen in March 2013, but have been consistent in severity throughout the rating period on appeal (since 2003). In fact, the more recent, higher GAF scores suggest a slight improvement in PTSD symptoms over the past several years. Moreover, the lower GAF scores in the 50s are commensurate with a higher 50 percent disability rating and with the symptoms the Veteran has described throughout the rating period. Further, the record reflects that, despite the a lack of deficits in many areas, the Veteran has consistently dealt with symptoms of depression (even to the point of becoming tearful during examinations), anxiety, social isolation, nightmares, intrusive thoughts, anger with non-violent outbursts, and sleep impairment, as described above. 

At this point, the Board emphasizes that the guidance of VA regulations, which provide that reasonable doubt regarding the degree of disability will be resolved in the veteran's favor; and that where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. See 38 C.F.R. §§ 4.3, 4.7. In view of these considerations, the Board finds that, in sum, the evidence relevant to the entire initial rating period prior to March 27, 2013, is at least in relative equipoise as to whether there was occupational and social impairment with reduced reliability and productivity, as required for a 50 percent disability rating under the rating criteria for mental disorders. 38 C.F.R. § 4.130. Namely, the evidence during this period reflects that the Veteran's PTSD symptoms were characterized in particular by chronic sleep impairment, anxiety, depression, irritability, low frustration tolerance, impaired impulse control without episodes of violence, disturbances of motivation and mood, intrusive thoughts, nightmares, suicidal ideation, and difficulty in establishing and maintaining effective work and social relationships. Therefore, the level of occupational and social impairment demonstrated by the evidence for the entire initial rating period on appeal is more nearly approximated by the 50 percent rating category, with reduced reliability and productivity, as described above. 

The Board finds, however, that the criteria for an even higher 70 or 100 percent disability rating have not been met for any part of the rating period on appeal. Specifically, the evidence does not demonstrate occupational and social impairment with deficiencies in most areas, nor does it demonstrate total occupational and social impairment. 

In this regard, the Board has considered the evidence relevant to the rating period from March 27, 2013, forward. VA treatment records from 2013 and 2014 show ongoing treatment for symptoms including depressed mood, significant anxiety, intrusive thoughts, insomnia, nightmares, and social avoidance. Speech was normal, the Veteran was fully oriented, behavior was appropriate, thought content was unremarkable, memory was intact, there were no perceptual abnormalities, and the Veteran denied suicidal ideation (although he reported constant thoughts of suicide at the 2013 VA examination). Moreover, the 2013 VA examiner concluded that the Veteran's PTSD symptoms would result in occupational and social impairment with reduced reliability and productivity, and assigned a GAF score of 55, commensurate with the currently assigned 50 percent disability rating. 

Further, the Veteran has maintained his full-time job at the post office since 2000, and, although he reports difficulty getting along with his co-workers and supervisors, he has reported good relationships with his wife and children. None of the symptoms listed in the 100 percent disability rating category are demonstrated by the evidence. 

The Board acknowledges that the Veteran has reported suicidal ideation (a symptom listed in the 70 percent disability rating category) beginning as early as 2012, as described above. At the 2014 Board hearing, he testified that he has had suicidal ideation for the past several years, but did not report it at his counseling sessions because he was afraid he would lose his job as a result. In addition, the Veteran contends and the evidence demonstrates that he has difficulty adapting to stressful circumstances (including work), also a symptom listed in the 70 percent rating category. However, the Veteran's medical treatment records indicate that his suicidal ideation was without plan or intent, and was more passive in nature. Further, as noted above, the Veteran has been able to maintain his current job for well over a decade. In essence, the Veteran's symptoms, while significant, has simply not resulted in occupational and social impairment with deficiencies in most areas, as is contemplated by the assignment 70 percent disability rating. Finally, as noted above, there is conflicting evidence even as to the assignment of a higher 50 percent disability rating herein, and the Board has already resolved reasonable doubt in increasing the rating from 30 percent to 50 percent prior to March 27, 2013. And the Veteran's symptoms have remained essentially at a consistent level of intensity since, and evidenced, for example, by continued retention of his job.

In this regard, it is important for the appellant to understand that the 50 percent rating assigned herein acknowledges significant problems. A 50 percent evaluation indicates, generally, a 50 percent reduction in the Veteran's industrial capability and social adeptness. If the Veteran had not had any problems associated with his psychiatric disability, there would be no basis for a compensable evaluation, let alone a 50 percent evaluation for the psychiatric disability, which is not always supported by the medical evidence cited above, for reasons cited above. The critical question in this case, however, is whether the problems the Veteran has believably cited meet an even higher, 70 or 100 percent, level under the rating criteria. For reasons cited above, they do not, for any part of the rating period on appeal. 

The Board has considered whether an extraschedular evaluation is warranted for PTSD. In exceptional cases an extraschedular rating may be provided. 38 C.F.R. § 3.321 (2013). The threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. Therefore, initially, there must be a comparison between the level of severity and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability. Thun v. Peake, 22 Vet. App. 111 (2008).

Under the approach prescribed by VA, if the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule, the assigned schedular evaluation is, therefore, adequate, and no referral is required. In the second step of the inquiry, however, if the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, the RO or Board must determine whether the claimant's exceptional disability picture exhibits other related factors such as those provided by the regulation as "governing norms." 
38 C.F.R. 3.321(b)(1) (related factors include "marked interference with employment" and "frequent periods of hospitalization"). When the rating schedule is inadequate to evaluate a claimant's disability picture and that picture has related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for completion of the third step-a determination of whether, to accord justice, the claimant's disability picture requires the assignment of an extraschedular rating. Id.

Turning to the first step of the extraschedular analysis, the Board finds that the symptomatology and impairment caused by the Veteran's PTSD is specifically contemplated by the schedular rating criteria, and no referral for extraschedular consideration is required. The schedular rating criteria, contained in the general rating formula for mental disorders, specifically provides for disability ratings based on a combination of history and clinical findings. In this case, considering the lay and medical evidence for the entire rating period on appeal, the Veteran's PTSD manifested chronic sleep impairment, anxiety, depression, irritability, low frustration tolerance, impaired impulse control without episodes of violence, disturbances of motivation and mood, intrusive thoughts, nightmares, suicidal ideation, and difficulty in establishing and maintaining effective work and social relationships. These symptoms are part of the schedular rating criteria. In addition, the levels of occupational and social impairment are explicitly part of the schedular rating criteria. The GAF scores are also incorporated as part of the schedular rating criteria as they tend to show the overall severity of symptomatology or overall degree of impairment in occupational and social functioning. Moreover, all the Veteran's psychiatric symptomatology is contemplated by the schedular rating criteria, which rates by analogy psychiatric symptoms that are "like or similar to" those explicitly listed in the schedular rating criteria. Mauerhan, 16 Vet. App. at 443.

Beyond the above, the Board has considered the issue of whether unemployability (TDIU) has been raised by the record and concludes that is has not. As noted above, despite his occupational difficulties due to his PTSD symptoms, the Veteran has maintain his current full-time job since 2000.

The schedule is intended to compensate for average impairments in earning capacity resulting from service-connected disability in civil occupations. 
38 U.S.C.A. § 1155. "Generally, the degrees of disability specified [in the rating schedule] are considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disability." 38 C.F.R. § 4.1. In this case, the problems reported by the Veteran are specifically contemplated by the criteria discussed above, including the effects on his daily life. In the absence of exceptional factors associated with the psychiatric disability, the Board finds that the criteria for submission for assignment of an extraschedular rating pursuant to 38 C.F.R. § 3.321(b)(1) are not met. See Bagwell v. Brown, 9 Vet. App. 337 (1996); Shipwash v. Brown, 8 Vet. App. 218, 227 (1995).

As provided for by the Veterans Claims Assistance Act of 2000 (VCAA), VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2002 & Supp. 2013); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a) (2013). 

Because the current appeal arises from the Veteran's disagreement with the initial evaluation following the grant of service connection for PTSD, no additional notice is required. The Federal Circuit and the Court have held that, once service connection is granted and the claim is substantiated, additional notice is not required, and any defect in notice is not prejudicial. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App.112 (2007); 38 C.F.R. § 3.159(b)(3)(i) (no duty to provide VCAA notice upon receipt of a notice of disagreement); VAOPGCPREC 8-2003 (in which the VA General Counsel interpreted that separate notification is not required for "downstream" issues following a service connection grant, such as initial rating and effective date claims).

The Board is also satisfied VA has made reasonable efforts to obtain relevant records and evidence, including affording a VA examination. Specifically, the information and evidence that has been associated with the claims file includes the Veteran's service treatment records, post-service VA and private treatment records, VA examination reports, and the Veteran's statements, including his testimony at 2011 and 2014 Board hearings. The treatment records discussed in the Joint Motion and requested in the Board's August 2012 remand were obtained and associated with the claims file. 

The Court held in Bryant v. Shinseki, 23 Vet. App. 488 (2010), that 38 C.F.R. 3.103(c)(2) requires that the RO official or VLJ who conducts a hearing fulfill two duties to comply with the above regulation. These duties consist of (1) the duty to fully explain the issues and (2) the duty to suggest the submission of evidence that may have been overlooked. Here, during the 2014 Board hearing, the undersigned Veterans Law Judge asked questions pertaining to the criteria necessary for establishing his claim, including regarding specific evidence that may help substantiate his claim. Moreover, neither the Veteran, nor his representative, has asserted that VA failed to comply with 38 C.F.R. 3.103(c)(2), nor has he identified any prejudice in the conduct of the Board hearing. As such, the Board finds that, consistent with Bryant, the Veterans Law Judge complied with the duties set forth in 38 C.F.R. 3.103(c)(2), and that any error in notice provided during the hearing constitutes harmless error.
 
The Veteran has been afforded an adequate examination on the issue of rating his PTSD. VA provided the Veteran with examinations in April 2005, June 2010, and April 2013. The Veteran's history was taken, and a complete psychiatric examinations and interviews were conducted. Conclusions reached and diagnoses given were consistent with the examination reports. Therefore, the Veteran has been afforded an adequate examination on the issue decided herein. Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008). The Board further finds that the March 2013 VA examination substantially complies with its August 2012 remand directives. 

Significantly, the Veteran has not identified, and the record does not otherwise indicate, any additional existing evidence that is necessary for a fair adjudication of the claim that has not been obtained. 

Hence, no further notice or assistance to the Veteran is required to fulfill VA's duty to assist in the development of the claim. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001); see also Quartuccio v. Principi, 16 Vet. App. 183 (2002).



ORDER

A 50 percent disability rating for PTSD, but no higher, is granted for the initial rating period prior to March 27, 2013.

A disability rating in excess of 50 percent for PTSD is denied for the entire initial rating period on appeal. 




____________________________________________
JONATHAN B. KRAMER
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs